**Richard Lee STADT, Appellant,**

v.

**The STATE of Texas.**

**No. PD–1937–03.**

Court of Criminal Appeals of Texas.

Nov. 23, 2005.

Rehearing Denied Feb. 8, 2006.

Joe Roden, Houston, for Appellant.

Alan Curry, Asst. District Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, WOMACK, and JOHNSON, JJ., joined.

The court of appeals held that the trial court did not err in instructing the jury on the lesser included offense of criminally negligent homicide. We affirm.

Our discussion begins with a summary of the relevant facts. On October 24, 2000, a Harris County grand jury presented an indictment that charged appellant with manslaughter under Texas Penal Code § 19.04. The indictment alleged, in relevant part, that

> Richard Stadt ... on or about January 31, 2000, did ... recklessly cause the death of D. Turner by operating his motor vehicle ... at an unreasonable speed, by failing to maintain a proper lookout for traffic and road conditions, by failing to maintain a single lane of traffic, and by changing lanes in an unsafe manner.

Thus, the indictment alleged four alternate theories of reckless conduct on appellant's part.

On November 27, 2001, the State brought appellant to trial before a petit jury on his plea of not guilty. At the guilt stage of that trial, the State, in an effort to prove appellant's guilt, presented thirteen witnesses and numerous exhibits, including appellant's own written statement. Appel-

lant, in his defense, presented eight witnesses, including himself, and two exhibits.

The evidence presented by the State at the guilt stage, if believed, established the following: At approximately 10:40 a.m. on the morning of January 31, 2000, in the City of Spring, appellant drove an eighteen-wheel tractor-trailer rig southbound in the right-hand lane of Interstate Highway 45. As appellant neared and then drove onto the Spring–Stuebner overpass, he maintained a speed of approximately 70 miles per hour, although the posted speed limit was 55 miles per hour. The surface of the highway in the area was "very rough," with "many potholes and grooves" and "dips and sways." The traffic lanes on the overpass were relatively narrow, and there was no shoulder. Instead of a shoulder, there was a concrete barrier just outside the right-hand lane. When appellant approached the top of the overpass, he "looked at" his rearview mirror, and, within an instant, the right front wheel of his tractor-trailer rig collided with the concrete barrier. Appellant's tractor-trailer rig then ricocheted off the concrete barrier, crossed over the other lanes of traffic and the highway's median, and hit two vehicles traveling northbound. In one of those vehicles was Dale Turner, who was killed instantly. Appellant survived the accident and, afterward, told an Emergency Medical Services worker at the scene that "he had taken some medication [earlier that morning] and he was a little bit drowsy."

Appellant, with his evidence, tried to paint a slightly different picture. The evidence he presented at the guilt stage, if believed, established the following: On the evening of January 30, 2000, appellant, who was a truck driver for General Pack-aging Corporation in Richardson, went to bed at his home at around 10:00 p.m., which, for him, was an hour later than usual. He awoke the next morning at around 4:00 a.m. After taking a prescription medication for his high blood pressure and doing a few other routine things, he left for work. He arrived at the General Packaging Corporation truck yard at around 5:00 a.m., at which time he performed a routine safety check of his eighteen-wheel tractor-trailer rig. At around 6:00 a.m., appellant drove his tractor-trailer rig out of the truck yard and began his usual run to Houston on the Interstate. At around 7:00 a.m., he stopped his rig in Corsicana for re-fueling. During that re-fueling stop, he napped inside the rig. At around 8:00 a.m., appellant resumed his run to Houston. A short time later, near Madisonville, he pulled off the Interstate and performed a routine safety check of his rig's tires. He then resumed his run to Houston. As he neared and then drove onto the Spring–Stuebner overpass, a stretch of highway with which he was familiar, he reduced his speed but stayed within the flow of traffic. He then made "a quick check of [his] mirrors just to see what was around [him]." As appellant's gaze turned forward again, his right front wheel impacted the concrete barrier just to the right of his traffic lane. He had "no clue why it happened."

At the conclusion of the presentation of the evidence at the guilt stage, the trial court presented its proposed jury charge to both parties. The proposed charged authorized the jury to convict appellant of manslaughter, as alleged alternatively in the indictment, or the lesser included offense of criminally negligent homicide.[1] Appellant objected to the inclusion of crim-

---

1. Criminally negligent homicide is a lesser included offense of manslaughter. See discussion, *infra.*

inally negligent homicide in the charge, but the trial court overruled the objection. The jury later found appellant not guilty of manslaughter but guilty of criminally negligent homicide. The jury assessed appellant's punishment at imprisonment for three years, probated.

On direct appeal, appellant argued that the trial court erred in instructing the jury on criminally negligent homicide "because no evidence permitted the jury to rationally find that if [he] was guilty, he was guilty only of criminally negligent homicide." Appellant, citing *Arevalo v. State*, 970 S.W.2d 547 (Tex.Crim.App.1998), argued in particular that an instruction on criminally negligent homicide was not warranted because there was no evidence adduced at trial that "refute[d] or negate[d] each and every one of the four alternate theories of manslaughter" alleged in the indictment and on which the jury charge authorized the jury to convict.

The court of appeals rejected appellant's argument and held that the trial court did not err in instructing the jury on the lesser included offense of criminally negligent homicide. *Stadt v. State*, 120 S.W.3d 428, 440 (Tex.App.-Houston [14th Dist.] 2003). We granted appellant's petition for discretionary review in order to determine whether the court of appeals erred. See Tex.R.App. Proc. 66.3(c).

■ A trial court may instruct the jury on a lesser included offense if (1) the offense in question is a lesser included offense under Article 37.09 of the Texas

Code of Criminal Procedure[2] and (2) there is some evidence that would permit a rational jury to find that the defendant is not guilty of the greater offense but is guilty of the lesser included offense. *Hayward v. State*, 158 S.W.3d 476, 478 (Tex.Crim. App.2005); *Moore v. State*, 969 S.W.2d 4, 8 (Tex.Crim.App.1998). This two-prong test is usually known as the *Rousseau* test, after the case in which the test was first stated in that exact form. See *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim. App.1993). It is the second prong of the *Rousseau* test that is the subject of this appeal.

Appellant's reliance on *Arevalo v. State*, 970 S.W.2d 547, is misplaced. In that case, we held that, "if sufficient evidence of more than one theory of the greater offense is presented to allow the jury to be charged on alternate theories [of the greater offense], the second prong of the [Rousseau] test is satisfied only if there is evidence which, if believed, refutes or negates every theory which elevates the offense from the lesser to the greater." In this case, what elevated the offense from the lesser to the greater was the culpable mental state.

Under Texas Penal Code § 19.04, a person commits manslaughter "if he recklessly causes the death of an individual." Under Texas Penal Code § 6.03(c),

[a] person acts recklessly ... with respect to ... the result of his conduct when he is aware of but consciously

2. Article 37.09 provides:
An offense is a lesser included offense if:
(1) it is established by proof of the same or less than all the facts required to establish the commission of the charged offense;
(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

disregards a substantial and unjustifiable risk that ... the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Under Texas Penal Code § 19.05, a person commits criminally negligent homicide "if he causes the death of an individual by criminal negligence." Under Texas Penal Code § 6.03(d),

[a] person acts with criminal negligence ... with respect to ... the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that ... the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

■ The offense of manslaughter "involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards it." *Lewis v. State*, 529 S.W.2d 550, 553 (Tex.Crim.App.1975). The offense of criminally negligent homicide, on the other hand, "involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the result thereof [but fails] to perceive the risk." *Ibid.* Thus, criminally negligent homicide is a lesser included offense of manslaughter, because the two offenses differ only in that criminally negligent homicide requires a less culpable mental state. *Aliff v. State*, 627 S.W.2d

166, 171 (Tex.Crim.App.1982); Art. 37.09(3), fn. 2, *supra.*

■ The question before us is not whether there was some evidence presented at appellant's trial that would permit a rational jury to find that he was not guilty of each and every alternate theory of manslaughter alleged in the indictment but whether there was some evidence presented at appellant's trial that would permit a rational jury to find that he possessed the culpable mental state of criminal negligence rather than recklessness. After reviewing the record, we conclude that there was such evidence presented at appellant's trial.

At appellant's trial, evidence was presented to the effect that (1) on the night before the accident, he slept less than he usually slept; (2) on the morning of the accident, he took a prescription medication that made him drowsy; (3) on the morning of the accident, he performed multiple safety checks of his vehicle; (4) at the time of the accident, he was driving approximately fifteen miles per hour over the posted speed limit; (5) at the time of the accident, he was already familiar with the narrow lanes and poor road conditions on the Spring–Stuebner overpass; (6) at the time of the accident, he took his eyes off the road for a moment in order to look into his rearview mirror; (7) at the time of the accident, he had "no clue" as to why the accident happened; and (8) Dale Turner's death resulted from the accident. Given this evidence, a rational jury could have found that appellant was not guilty of manslaughter as alleged in the indictment and included in the charge but was nevertheless guilty of criminally negligent homicide.[3] That is, a rational jury could have

---

**3.** We hasten to add that, given the evidence at trial, a rational jury could have found appellant guilty of manslaughter. That is, in this case, a rational jury could have viewed the evidence in either of two ways, one supporting a finding of guilt of manslaughter, with its

found that (1) appellant's conduct caused the death of Dale Turner; (2) appellant ought to have been aware of a substantial and unjustifiable risk of death created by his excessive speed and his failure to maintain a proper lookout on a highway with narrow lanes and poor road conditions; (3) appellant, though normally safety-conscious, was not aware of the substantial and unjustifiable risk of death created by his conduct, due either to lack of sleep or drowsiness caused by medication or perhaps just simple inattentiveness; and (4) appellant's failure to perceive the risk created by his conduct constituted a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from appellant's viewpoint. In short, given the evidence adduced at appellant's trial, the second prong of the *Rousseau* test was met, as the court of appeals held.

We affirm the judgment of the court of appeals.

KEASLER and HERVEY, JJ., concurred in the result.

COCHRAN, J., did not participate.

higher culpable mental state, the other supporting a finding of guilt of criminally negligent homicide, with its lower culpable mental state.