NO.
12-05-00263-CR

 

IN THE COURT OF APPEALS

                

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

ANTHONY WASYLINA,      §          APPEAL
FROM THE THIRD

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §          ANDERSON
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



OPINION








            Anthony
Wasylina appeals his conviction for criminally negligent homicide, for which he
was sentenced to confinement for two years, probated for five years.  In one issue, Appellant argues that the trial
court improperly submitted in its charge the lesser included offense of criminally
negligent homicide.  We reverse and
render.

 

Background

            Appellant
owns a cabin on property located in rural Anderson County, Texas.  On August 1, 2003, Appellant, Bryan
Lenoir, Lenoir’s wife, Amy, and Michael Slater gathered at Appellant’s cabin to
visit and ride four wheelers in the area near Appellant’s cabin.[1]    

            At
approximately 7:00 p.m., Lenoir, Amy, and Appellant rode four wheelers to a
nearby boat ramp on the Trinity River. 
There, they encountered a man in a pickup truck named James Guthrie.[2]








 
Guthrie appeared very intoxicated and acted in an unusual manner.  The group spoke with Guthrie for about
forty-five minutes before leaving to return to Appellant’s cabin.  

            As
the group rode the four wheelers back to Appellant’s cabin, they noticed that
Guthrie was following them in his truck. 
Appellant stopped, and Guthrie pulled up beside him.  Guthrie told them[3] he was just
making sure they lived where they had told him they lived.  The group again set out for Appellant’s
cabin.  

            When
they arrived, Guthrie drove past them, but turned around and stopped his truck
to talk to Appellant’s neighbor, Thomas Foster. 
After a few minutes, Appellant walked over to where Guthrie and Foster
were standing to find out what the problem was. 
Lenoir’s wife, Amy, overheard Guthrie tell Foster he thought the people
in the group were poachers.  During the
discussion, Guthrie made a pass at Amy and told her to “dump these losers and
come smoke dope” with him.  Soon
thereafter, the group told Guthrie that they were going to go riding on their
four wheelers again, and Guthrie left in his truck.

            Appellant,
Lenoir, Amy, Foster, and Foster’s son, Andrew, then congregated on the porch at
Appellant’s cabin.  Subsequently, Lenoir
noticed a light coming down the road that he believed to be a four
wheeler.  Next, the group heard gunshots
being fired from an area near Foster’s property.  Appellant, who was armed with a .357 magnum
handgun, and Foster went to investigate. 
As they approached Foster’s truck, Appellant saw a muzzle flash, heard
two gunshots, and heard the shots traveling through the trees above them.  As the two drew closer to Foster’s truck,
Foster heard the sound of metal scraping and yelled to a person he saw trying
to hide behind the truck to get away from it. 
Foster then heard another gunshot, saw a muzzle flash near his truck,
and stated that it seemed the shot went over his head.  Appellant pointed his flashlight toward the
shooter, and Guthrie emerged from behind the truck.  








            Foster
could see a gun in Guthrie’s left hand, which Guthrie held down by his
side.  Guthrie had a liquor bottle in his
right hand.  Lenoir, armed with a 30.30
rifle, came to where the men had gathered. 
Guthrie put the gun in his pocket. 
Lenoir knocked the bottle out of Guthrie’s right hand.  Appellant, who now had his gun drawn, and
Guthrie began to yell at one another. 
The two men were about four to five feet apart.  Foster later stated that everything was
happening very quickly.  Appellant told
Guthrie to stay where he was because Appellant was going to call the
sheriff.  Guthrie then lunged toward
Appellant and pushed Appellant in the face causing Appellant to fall backwards.[4]  As Appellant fell backwards, his handgun
discharged a round,[5] which struck Guthrie in the forehead.  Guthrie died from this wound.  Appellant and Lenoir placed their firearms on
the ground, and Foster immediately called 9-1-1.  

            Appellant
was charged with manslaughter and pleaded “not guilty.”  The matter proceeded to jury trial.  After the close of evidence, the trial court
conducted a charge conference.  During
the charge conference, Appellant objected to the submission of the lesser
included offense of criminally negligent homicide arguing that the issue of
negligent conduct as opposed to intentional or reckless conduct was not raised
by the evidence.  The trial court
overruled Appellant’s objection. 
Ultimately, the jury found Appellant “not guilty” of manslaughter, but
found Appellant guilty of criminally negligent homicide.[6]  The trial court sentenced Appellant to
confinement for two years, but probated Appellant’s sentence and placed him on
community supervision for five years.  This
appeal followed.

 

Lesser Included Offense

            In
his sole issue, Appellant argues that the trial court erred in submitting the
lesser included offense of criminally negligent homicide because the evidence
does not support that he acted with criminal negligence.  An offense is a lesser included offense if
(1) it is established by proof of the same or less than all the facts required
to establish the commission of the offense charged; (2) it differs from the
offense charged only in the respect that a less serious injury or risk of
injury to the same person, property, or public interest suffices to establish
its commission; (3) it differs from the offense charged only in the respect
that a less culpable mental state suffices to establish its commission; or (4)
it consists of an attempt to commit the offense charged or an otherwise
included offense.  Tex. Code Crim. Proc. Ann. art. 37.09
(Vernon 2006).  Furthermore, a charge on
a lesser included offense should be given only when there is some evidence that
would permit a rational jury to find that the defendant is guilty of the lesser
offense but not guilty of the greater.  See
Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau
v. State, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993).  Appellant concedes that criminally negligent
homicide is a lesser included offense of manslaughter.  See Stadt v. State, 182 S.W.3d
360, 364 (Tex. Crim. App. 2005).  Thus,
our analysis will focus on whether there is any evidence of record that would
permit a rational jury to find that the defendant is guilty of only criminally
negligent homicide.  








            To
support a conviction for criminally negligent homicide, the evidence must show
that the defendant caused the death of an individual by criminal
negligence.  See Tex. Pen. Code Ann. § 19.05(a)
(Vernon 2003).  A person acts with criminal
negligence, or is criminally negligent, with respect to circumstances
surrounding his conduct or the result of his conduct when he ought to be aware
of a substantial and unjustifiable risk that the circumstances exist or the
result will occur.  Tex. Pen. Code Ann. § 6.03(d) (Vernon
2003).  The elements of manslaughter
differ from criminally negligent homicide only as to the requisite mental
state.  Compare Tex. Pen. Code Ann. § 19.04(a) (Vernon
2003) with Tex. Pen. Code Ann. §
19.05(a).  Manslaughter requires that the
actor behave recklessly.  See Tex.
Pen. Code Ann. § 19.04(a).  A
person acts recklessly, or is reckless, with respect to circumstances
surrounding his conduct or the result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or
the result will occur.  Tex. Pen. Code Ann. § 6.03(c) (Vernon
2003).  Recklessness has been described
as involving conscious risk creation, that is, the actor is aware of the risk
surrounding his conduct or the results thereof. 
See Stadt, 182 S.W.3d at 364.  Criminal negligence has been described as
involving inattentive risk creation, that is, the actor ought to be aware of
the risk surrounding his conduct or the result thereof, but fails to perceive
the risk.  Id.       The
court of criminal appeals’ opinion in Thomas v. State, 699 S.W.2d
845 (Tex. Crim. App. 1985) is instructive on the issue before us.  In Thomas, there was
conflicting testimony as to whether the shooting was accidental.  Id. at 849.  In its analysis, the court stated as follows:

 

Every
case in which someone points a loaded gun at another does not require that a
charge on criminally negligent homicide be given.  Nor does the allegation of accidental discharge
necessarily raise the issue.  The
attendant circumstances from which the defendant’s mental state can be inferred
must be collectively examined in light of the definition of criminally
negligent conduct (citation omitted) .... 
Other evidence raising the issue of whether or not a defendant was aware
of the risk must be presented before such a charge is required.

 

Evidence that a defendant knows a gun is loaded, that he is
familiar with guns and their potential for injury, and that he points a gun at another,
indicates a person who is aware of a risk created by that conduct and
disregards the risk.           

 

                ....

 

Accidental discharge alone does not raise the issue [of
criminally negligent homicide].  Rather,
every case must be examined in light of its particular facts and circumstances
to determine if the defendant was unaware of the risk his conduct created.  

 

Id. at 850.  After noting that some evidence of record
reflected (1) the appellant was familiar with the gun, (2) the appellant was
unsure whether or not the gun was loaded, (3) the appellant exhibited the gun
and pointed it at the deceased with his finger on the trigger, (4) the
appellant knew it was possible to fire it and harm the deceased, and (5) that
the gun accidentally went off as the appellant struggled with the deceased, the
court held that the evidence may have entitled the appellant to a charge on
involuntary manslaughter, but did not raise criminally negligent homicide.  Id. at 852.

            In
the case at hand, there is some evidence to support that Appellant’s shooting
Guthrie was accidental, i.e., the gun “went off.”  But we iterate that accidental discharge
alone does not raise the issue of criminally negligent homicide.  Id. at 850.  Thus, for us to conclude that the trial court
properly included the offense of criminally negligent homicide, there must be
some evidence that Appellant was unaware of the risk his conduct created.  See id. 
Our perusal of the record does not reveal any evidence that
Appellant failed to perceive the risk of approaching the source of gunfire
while armed himself or pointing his gun at an armed man who was visibly
intoxicated and in close proximity to him.

            To
the contrary, the record reflects that Appellant was familiar with guns and had
previously fired the gun with which he was armed on the night in question.  Furthermore, the record reflects that
Appellant loaded his own shells,[7] but does not indicate if Appellant in
fact knew that his gun was loaded on the night in question.  When considering the type of handgun Appellant
owned and the length of the barrel in conjunction with the notion that the
person who owned such a gun loaded his own shells, Texas Ranger Rudy Flores
testified that the weapon’s owner was likely an “avid shooter” and had “a good
amount of knowledge of his firearm and his equipment.”  The record further indicates that Appellant
had hunted in the past.  In his written
statement to police, Appellant stated that as they walked toward where the
shots originated he “could hear the bullets going through the trees above [him]”
and remembered “wondering what it would feel like if [he] got shot.”  Appellant further stated that he “felt
threatened by being shot at” and  “was
also threatened when [Guthrie] came at [him].” 
Similarly, Amy Lenoir testified that from their reaction, it seemed to
her that Appellant and Foster were “fearful” as a result of the shots being
fired and were “concerned about everyone’s safety.”

            On
the other hand, Appellant’s statement also reveals that Appellant had consumed
seven or eight beers over a five hour period. 
Yet there is no evidence as to the level of Appellant’s intoxication or
if he was, in fact, intoxicated.  Flores
testified that he was familiar with what alcohol does to a person’s body and
intellectual ability.  As to a person’s
decision making skills, Flores testified that alcohol affects judgment and
reason, as well as a person’s ability to make good decisions about what he is
doing.  Flores concluded that in a
hypothetical situation, where a person had consumed seven or eight beers over a
five hour period, that person’s judgment would have been impaired.  

            From
our reading of Flores’s testimony, we do not interpret his statement that the
amount of alcohol consumed in the aforementioned hypothetical, although it
impaired judgment, necessarily would have impaired a person’s judgment in a
fashion wherein the person was no longer able to perceive a risk.  The remaining evidence indicates that
Appellant was very familiar with firearms and the risks associated therewith.  Inasmuch as Appellant had previously hunted,
it follows that he was familiar with a gun’s potential to cause injury or
death.  Finally, the record clearly
indicates that Appellant pointed his gun at Guthrie, yet another indicator that
Appellant was aware of a risk created by his conduct and disregarded such a
risk.  Accordingly, we hold that there is
no evidence of record that would permit a rational jury to find that Appellant
is guilty of criminally negligent homicide, but not guilty of
manslaughter.  See Salinas v. State,
163 S.W.3d at 741.  Appellant’s sole
issue is sustained.

Harm Analysis

            Having
determined that there was error in the charge, we must now decide if sufficient
harm was caused by the error to require a reversal.  Castillo v. State, 7 S.W.3d
253, 260 (Tex. App.–Austin 1999, pet. ref’d) (citing Hutch v. State,
922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). 
A jury charge error must be reviewed for harm under article 36.19 of the
Texas Code of Criminal Procedure as interpreted by Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).  As Almanza explains, article
36.19 separately contains standards for both fundamental error and ordinary
reversible error.  See id.
at 171.  Error properly preserved by an
objection will require reversal “as long as the error is not harmless.”  Id.  This has been interpreted to mean any harm
regardless of degree.  See Hutch,
922 S.W.2d at 171.

            In
the case at hand, charges on manslaughter and criminally negligent homicide
were submitted to the jury.  The jury
found Appellant “not guilty” of manslaughter, but found Appellant “guilty” of
criminally negligent homicide.  Thus, the
jury acquitted Appellant of the only charge properly submitted.  

            The
State cites Saunders v. State, 913 S.W.2d 564 (Tex. Crim. App.
1995), arguing that the error is harmless because had the criminally negligent
homicide charge not been submitted, the jury was likely to have convicted
Appellant of the greater offense of manslaughter inasmuch as it rejected his
self defense argument in finding him “guilty” of criminally negligent
homicide.  In Saunders,
however, the court of criminal appeals held that submission of the lesser
included offense was harmless, but the appellant was convicted of the greater
offense.  Id. at 565.  Thus, its facts are distinguishable from the
case at hand where Appellant was acquitted of the greater offense.   

            Yet
the court’s analysis in Saunders necessitates that we further
discuss the issue of harm.  See, e.g.,
id. at 574.  While we recognize
that it is not outside the realm of speculation that the jury in the instant
case may have reached a different decision had only the charge of manslaughter
been submitted, we cannot ignore the fact that the jury was charged with and
did acquit Appellant of manslaughter. 
The inclusion or exclusion of a lesser included offense does not alter
the jury’s responsibilities with regard to its consideration of the greater
offense, and we presume that the jury followed the instructions in the court’s
charge.  See Arnold v. State,
766 S.W.2d 852, 855 (Tex. App.–Dallas 1989), rev’d on other grounds, 786
S.W.2d 295 (Tex. Crim. App. 1990) (appellate court generally presumes, although
the presumption is rebuttable, that a jury follows the instructions given by
the trial court).  

            Here,
the jury was instructed that if it did not find from the evidence beyond a
reasonable doubt that Appellant recklessly caused Guthrie’s death by shooting
him in the head, then it was to acquit the defendant of manslaughter and
consider whether the defendant was guilty of criminally negligent
homicide.  The jury was further
instructed as follows:

 

You
are limited in your deliberations upon a verdict to the consideration and
discussion of such facts and circumstances only as were admitted in evidence ,
or as reasonably deductible from the evidence, and you cannot legally and must
not consider nor discuss any fact or circumstance not thus in evidence or
reasonably deductible from the evidence.

 

            The
record does not suggest that the jury acted contrary to any of the trial court’s
instructions.  Indeed, the jury acquitted
Appellant of manslaughter, but found him “guilty” of criminally negligent
homicide.  Therefore, we presume that the
jury weighed the evidence and determined that it should acquit Appellant of
manslaughter before it gave any consideration to whether Appellant was guilty
of criminally negligent homicide.  

            In
sum, the removal of the criminally negligent homicide charge from the jury’s
consideration does not change the evidence on which it based its verdict that
Appellant is “not guilty” of manslaughter. 
Moreover, the record does not support that the jury acted in any way
other than in accordance with the trial court’s instructions that (1) it must
acquit Appellant of manslaughter before it could consider the charge of
criminally negligent homicide and (2) it was limited in its deliberations to
the consideration and discussion of such facts and circumstances only as were
admitted in evidence, or as reasonably deductible from the evidence and could
not legally consider nor discuss any fact or circumstance not in evidence or
reasonably deductible therefrom. 
Therefore, after reviewing the entirety of the record, we cannot
conclude that the trial court’s improper submission of the offense of
criminally negligent homicide was harmless.

 

 

Disposition

            Having
sustained Appellant’s sole issue and determined the error committed to be
harmful, we reverse the trial court’s judgment and render
a judgment of acquittal.

 

 

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

Opinion delivered January 24, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

                                                                                                

(PUBLISH)











[1]
The record reflects that Appellant and Lenoir were drinking beer that day.  Lenoir stated that the men had consumed two
or three beers at the most.  In his
statement to police, Appellant stated that he had consumed seven or eight beers
over a five hour time period.





[2]
The record reflects that Guthrie identified himself only by his first name.





[3]
Amy Lenoir was riding on the back of Appellant’s four wheeler.





[4]
Although he fell backwards, Appellant did not fall to the ground.





[5] There is contradicting evidence in the record
on this point.  In his written statement
to police, Appellant stated that his gun “went off.”  However, during Appellant’s cross examination
of Investigator Chuck Franklin concerning a taped statement Appellant gave on
the night in question, Franklin testified that Appellant said on the tape he “shot”
Guthrie.  Franklin further testified that
based on his investigation, he felt that Appellant “intentionally fired his
gun.”





[6] The jury was given a self defense instruction
in the court’s charge.





[7]
The record reflects that Appellant’s .357 magnum handgun was loaded with “light
loads,” that is one half the powder of an ordinary commercially produced
round.  Such a load, according to the
evidence, might typically be used in target shooting.