# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-22-00652-CR

**Robert Williams, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 424TH DISTRICT COURT OF LLANO COUNTY
### NO. CR8460, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING

## O P I N I O N

Appellant Robert Williams was convicted of felony murder, *see* Tex. Penal Code § 19.02(b)(3), after a highspeed police chase resulted in a crash that killed the passenger of his motorcycle. He contends that the trial court erred when it denied his request for jury instructions on lesser included offenses of manslaughter and criminally negligent homicide. We affirm.

## BACKGROUND

Officer Connor Ducoty, testified at trial, that on July 24, 2021, Williams was driving a motorcycle with passenger Farren Hawkins on the back when Officer Ducoty attempted to initiate a traffic stop after running the motorcycle's license plate and determining that the motorcycle had an expired registration. Williams did not stop and instead began to evade the officer, which resulted in a highspeed chase that crossed into another county and involved multiple police cars. Officer Ducoty stopped his chase when Williams left Burnet County.

Deputy Jeffery Johnston took over the chase as Williams entered Llano County. Deputy Johnston testified that Williams reached speeds of "almost 100" miles per hour and passed cars using both the shoulder of his lane and by crossing into the opposite lane of traffic, which Deputy Johnston described as "a dangerous act." Eventually the chase ended when Williams attempted to pass a car by driving on the right shoulder at the same time the car attempted to pull onto the shoulder to avoid the police car that was pursuing Williams. Williams attempted to correct and pass on the left side of the car but collided with the driver-side bumper, which resulted in him and Hawkins being thrown from the motorcycle and being severely injured.

Dash cam video from three separate police cars corroborated the officers' testimony. Admitted medical records showed that Hawkins died four days later, and the cause of death was "traumatic brain injury due to motorcycle collision."

During the charge conference, Williams requested jury instructions on two lesser-included offenses—manslaughter and criminally negligent homicide—which were denied.

After hearing all the evidence, the jury convicted Williams of felony murder and assessed punishment at 28 years' imprisonment. *See* Tex. Penal Code §§ 12.32 (setting punishment range for first-degree felony at life imprisonment or for any term of not more than 99 years or less than 5 years), 19.02(c) (defining felony murder as first-degree felony). Williams appealed.

## DISCUSSION

In his sole issue on appeal, Williams contends that the trial court erred when it denied his request for lesser-included-offense instructions for manslaughter and criminally negligent homicide.

We review the trial court's decision to deny the inclusion of a lesser-included-offense instruction for an abuse of discretion. *Steele v. State*, 490 S.W.3d 117, 126 (Tex. App.—Houston [1st Dist.] 2016, no pet.). When reviewing whether an instruction on a lesser included offense should have been given to the jury, we apply a two-prong test. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). First, we determine whether "the proof necessary to establish the charged offense also includes the lesser offense." *Id.* If we answer the first inquiry affirmatively, we "must then consider whether the evidence shows that if the Appellant is guilty, he is guilty only of the lesser offense." *Id.*

We begin our analysis with the first prong: whether manslaughter or criminally negligent homicide are lesser included offenses of the charged felony murder offense. We review this first step de novo as "a question of law." *Id.* To be a lesser included offense of the charged offense, the offense must either: (1) be established by proof of the same or less facts required to establish the commission of the offense charged; (2) differ only by requiring less serious injury or risk of injury to the same person; (3) differ only by requiring a less culpable mental state; or (4) be an attempt to commit the charged offense or another included offense. *See* Tex. Code Crim. Proc. art. 37.09. Here, Williams relies on the first and third methods of establishing a lesser-included offense.

We use the cognate-pleadings approach to determine whether the proposed lesser included offense can be established by proof of the same or less facts required to establish the commission of the offense charged. *See id.* art. 37.09(1); *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). This approach "does not depend on the evidence to be produced at the trial." *Hall*, 225 S.W.3d at 535. Rather, it "must be[] capable of being performed before trial by comparing the elements of the offense as they are alleged in the indictment or information with

3

the elements of the potential lesser-included offense." *Id.* at 535–36. "[T]he elements of the lesser-included offense do not have to be pleaded in the indictment if they can be deduced from facts alleged in the indictment." *Cavazos*, 382 S.W.3d at 383. To determine this, we use the "functional-equivalence concept," in which we "examine the elements of the lesser offense and decide whether they are functionally the same or less than those required to prove the charged offense." *Id.*

As relevant here, the information alleged that Williams committed felony murder when he:

> did then and there *intentionally or knowingly* commit or attempt to commit an act clearly dangerous to human life, to wit: operating a motorcycle with Farren Hawkins as a passenger and exceeding the posted speed limit or failing to control his speed or passing other motor vehicles in the turn lane or driving into an oncoming lane of traffic or driving on the shoulder of the roadway or attempting to pass another motor vehicle on the right hand shoulder of the roadway or failing to maintain a clear distance between the motorcycle he was operating and a motor vehicle ahead of him or colliding with another motor vehicle or any combination of the aforesaid acts or omissions, that caused the death of Farren Hawkins, and the Defendant was then and there in the course of *intentionally or knowingly* committing a felony, to-wit: Evading arrest or Detention with a motor vehicle, and the said death of Farren Hawkins was caused while the Defendant was in the course and furtherance of the commission or attempt of said felony.

(emphases added.)

Under the Penal Code, a person commits felony murder when the person "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in the immediate flight from the commission or attempt, the person commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." Tex. Penal Code § 19.02(b)(3). Felony murder attaches no

4

culpable mental state to the death of an individual. *See Lomax v. State*, 233 S.W.3d 302, 304 (Tex. Crim. App. 2007). Rather, felony murder is an "unintentional" murder with regards to causing the death of the individual and does not require a showing of the defendant's mental state regarding the result of their actions, compared with intentional murder, which is result-based and includes an element for the defendant's mental state regarding the result of their actions. *Compare id.* at 305 (explaining that "the very essence of [felony murder] is to make a person guilty of an 'unintentional' murder when he causes another person's death during the commission of some type of a felony"), *with Lugo-Lugo v. State*, 650 S.W.2d 72, 80 (Tex. Crim. App. 1983) (explaining that intentional murder under Sections 19.02(a)(1) is "result" based murder offense that focuses on defendant's intent to cause death rather than only intending action that caused death), *and Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003) ("Murder is a 'result of conduct' offense, which means that the culpable mental state relates to the result of the conduct, i.e., the causing of the death.").

Manslaughter is committed when a person "recklessly causes the death of an individual." Tex. Penal Code § 19.04(a). In the context of manslaughter, "[a] person acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur." *Schroeder,* 123 S.W.3d at 401 (quoting Tex. Penal Code § 6.03(c)). "Manslaughter is a result-oriented offense: the mental state must relate to the results of the defendant's actions." *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013). "The offense of manslaughter involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards it." *Stadt v. State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005).

Criminally negligent homicide is committed when a person "causes the death of an individual by criminal negligence." Tex. Penal Code § 19.05(a). Criminally negligent homicide "involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the result thereof but fails to perceive the risk." *Stadt*, 182 S.W.3d at 364 (cleaned up).

In sum, the requisite mental states for intentionally, knowingly, recklessly, and criminally negligently causing death are all subjective mental states that are focused on the defendant's subjective mindset regarding the result of his conduct, i.e., the death of the victim. *See Saunders v. State*, 840 S.W.2d 390, 392 (Tex. Crim. App. 1992) (distinguishing between evidence of appellant's "intent to kill or injure, his knowledge that death could result, or his awareness that a risk of death existed" and evidence of his actions in determining entitlement to lesser included offense instruction for criminal negligence). Thus, a comparison of the statutory elements of the offenses demonstrates that manslaughter and criminally negligent homicide both require proof of an element that felony murder does not—a culpable mental state regarding the death of the individual. Thus, neither is included within or established by proof of the same or less than all the facts required to prove felony murder, nor do they differ only by requiring a less culpable mental state. *See* Tex. Code Crim. Proc. art. 37.09(1), (3).

Williams agrees that under the statutory language of felony murder, manslaughter and criminally negligent homicide are not lesser included offenses. However, Williams contends that because the charging instrument included the added mental states of "intentionally or knowingly" before "commit or attempt to commit an act clearly dangerous to human life . . . that caused the death of Farren Hawkins," the State had to prove that Williams intentionally or knowingly caused the death of Hawkins. *See id.* art. 37.09 (1) ("To be a lesser included offense

6

of the charged offense, the offense must . . . be established by proof of the same or less facts required to establish the commission of the offense charged."); *Hall*, 225 S.W.3d at 535–36 (explaining that under cognate-pleadings approach we compare "the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense").

The State admits that the inclusion of "intentionally or knowingly" in the charging instrument increased the State's burden and required it to prove a mental state for elements of felony murder that are not statutorily required but contends that it did not do so for the element of causing Hawkins' death. Specifically, the State contends that it had to prove that Williams intentionally or knowingly committed an act clearly dangerous to human life—the reckless driving—and that he intentionally or knowingly committed the felony offense of evading arrest. The State further contends that they did not have to prove that he intentionally or knowingly caused the death of Hawkins. We agree.

As charged, the State had to prove: (1) that Williams intentionally or knowingly committed one of the alleged acts; (2) that the act was clearly dangerous to human life; (3) that the act caused the death of Farren Hawkins; and (4) that Williams was intentionally or knowingly committing the felony of evading arrest or detention with a motor vehicle. Thus, as charged, the mental states "intentionally and knowingly" modify the alleged action committed by Williams and commission of the felony, but do not apply to his subjective intent or knowledge about whether Hawkins would die.

The Court of Criminal Appeals explained in *Lugo-Lugo* that there is a distinction between the defendant's subjective mental state regarding causing the result to the victim and the objective standard of whether an act is clearly dangerous to human life. 650 S.W.2d at 81. Here,

7

the State did not have to prove that Williams intended for Hawkins to die as a result of his driving or that he was aware that his conduct was reasonably certain to cause her death. Rather, they had to prove that he intentionally or knowingly committed an act that the jury believed to be clearly dangerous to human life. The State did not have to prove, and the jury did not have to believe, that Williams himself believed the act to be clearly dangerous to human life. Comparatively, the mental states required for manslaughter and criminally negligent homicide relate to the result of "causing death," not to the commission of the action. Thus, because the mental states in the charging instrument did not relate to Williams' mental state regarding "causing death" but rather to the act that caused death and to the commission of the felony, manslaughter and criminally negligent homicide both include an element not included in the offense charged—a mental state for causing the result of death. *See Munoz v. State*, 533 S.W.3d 448, 455–56 (Tex. App.—San Antonio 2017, pet. ref'd) (holding that appellant was not entitled to lesser-included offense instruction for criminally negligent homicide when indictment included non-statutory "intentionally or knowingly" language because it modified appellant's engagement in certain dangerous conduct rather than intent to cause victim's death).

Williams relies on an opinion from this Court in which we rejected the appellant's contentions for entitlement to a lesser-included-offense instruction in a factually similar case to this one because the indictment in that case had been amended to remove the unnecessary mental states. *See Williamson v. State*, No. 03-17-00787-CR, 2019 WL 4849605 (Tex. App.—Austin Oct. 2, 2019, pet. ref'd) (mem. op., not designated for publication). Williams contends that because the charging instrument in this case was amended and still included the unnecessary mental states, that *Williamson* supports his entitlement to his requested lesser-included offense instructions. We disagree. In *Williamson*, we did not reach the issue of whether the mental state

8

language in the earlier indictment would have entitled him to the lesser-include offense instruction, but rather, held that he was not entitled to the requested instruction based on the language of the subsequent indictment. *Id.* at *4.

Having concluded as a matter of law that as pleaded in the indictment in this case, felony murder did not include manslaughter or criminally negligent homicide as lesser-included offenses, we do not reach the second prong of the analysis. *See Cavazos*, 382 S.W.3d at 382 (describing first prong as "threshold" and directing courts to address second prong only "if this threshold is met").

We hold that the trial court did not abuse its discretion by refusing Williams' requested lesser-included-offense instructions. *See Munoz*, 533 S.W.3d at 455–56. We overrule his sole issue.

**CONCLUSION**

Because we overrule Williams' sole issue, we affirm the trial court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana and Smith

Affirmed

Filed:   June 26, 2024

Publish

9